**Jo Ann GOLDSBY, Plaintiff,**

**v.**

**The CELOTEX CORPORATION, Owens-Illinois, Inc.; Raymark Industries, Inc.; Eagle-Picher Industries, Inc.; Fibreboard Corporation; Keene Corporation; GAF Corporation; Nicolet, Inc.; H.K. Porter Company, Inc., Defendants.**

No. 83–1376–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Aug. 8, 1984.

---

Brent M. Rosenthal, Fredrick M. Baron & Assoc., Dallas, Tex., William H. Pickett, Kansas City, Mo., for plaintiff.

William A. Lynch, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for defendant Keene Corp.

James Borthwick, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for defendant Fibreboard.

Theodore J. Furry, Birmingham & Furry, Kansas City, Mo., for defendant Nicolet.

William H. Woodson, Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant GAF.

Jeff O'Connor, Kansas City, Mo., for defendant Eagle-Picher.

Truman K. Eldridge, Jr., Dietrick, Davis, Dicus, Rowland, Schmitt & Gorman, Kansas City, Mo., for defendant Owens-Illinois.

Kenneth O. Smith, Knipmeyer, McCann, Fish & Smith, Kansas City, Mo., for defendant H.K. Porter Co.

John A. Koepke, Morris, Larson, King, Stamper & Bold, Kansas City, Mo., for defendant Raymark.

Michael J. Jerde, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., for defendant Celotex.

## MEMORANDUM AND ORDERS DENYING DEFENDANTS' ALTERNATIVE MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND DIRECTING FURTHER PROCEEDINGS

JOHN W. OLIVER, Senior District Judge.

### I.

This case pends on defendants' joint motion to dismiss or in the alternative for summary judgment. That motion and the suggestions in support and opposition were filed pursuant to Orders entered March 16, 1984 after a discovery conference had been conducted in this case.

Order (2) entered March 16, 1984 reflects counsels' view that separate questions were presented in this case (1) concerning this Court's admiralty jurisdiction, (2) the statute of limitations applicable to this case, and (3) a conflict of laws issue.

Our March 16, 1984 Order therefore approved the parties' agreement that they would agree upon and file a stipulation of facts relating to those questions and another order set forth the time schedule for the filing of the stipulation, for defendant's joint motion, and for suggestions in support and in opposition.

All parties complied with the Orders entered March 16, 1984 in a timely manner. Determination of the pending joint motion has been unfortunately delayed by a breakdown in communications between the Court and its staff. We regret and apologize to counsel for that delay. Defendants' joint motion will be denied for reasons we shall state in some detail. Orders will also be entered in regard to plaintiff's Rule 9(h) admiralty claim identification and directing the parties to agree upon a plan and schedule of discovery.

### II.

Defendants' joint motion alleges in paragraph 1 that: (1) the alleged wrongs committed by the defendants did not occur on or over navigable waters and (2) the alleged wrongs do not bear a significant relationship to traditional maritime activity.

Both sides properly recognize that *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) added an additional requirement for invocation of federal admiralty jurisdiction. Any doubt that there must be some relationship with traditional maritime activity for an injury sustained on navigable waters to fall within federal admiralty jurisdiction was not limited to the aviation context presented in *Executive Jet* was resolved by the Court's 1982 decision in *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). It is thus clear that the rule of *Executive Jet* is applicable to all admiralty cases.

The briefs of the parties, however, failed to focus on either the allegations of plaintiff's complaint or on the factual circumstances which have been stipulated in regard to this case. Plaintiff's complaint alleged that: "Throughout the employment of LEO GOLDSBY with the United States Navy, he worked aboard United States Navy vessels, both in dry dock and on the high seas, performing the traditional maritime activities of shipbuilding and ship repair." And the parties have stipulated that:

2. Leo Goldsby entered the Navy on February 1, 1949, and was discharged from service on January 1, 1950.

3. During his service with the Navy, Leo Goldsby was assigned to the U.S.S. Ozbourne, a destroyer, and served as a machinist's mate. Mr. Goldsby testified that his duties included repairing pipes in the boiler room which required cutting through asbestos insulation.

4. During Leo Goldsby's service with the Navy in 1949, the U.S.S. Ozbourne spent approximately 9 months at sea.

5. Mr. Goldsby has testified, and plaintiff alleges in this action, that during this approximately 9 months at sea aboard the U.S.S. Ozbourne, Leo Goldsby was exposed to asbestos insulation and asbestos fibers.

6. During approximately the last 2 months of 1949, Leo Goldsby was stationed on the U.S.S. Ozbourne while it was in dry-dock in Vallejo, California.

7. Mr. Goldsby has testified, and plaintiff alleges in this action, that during this period of drydock, Leo Goldsby was exposed to asbestos insulation and asbestos fibers.

8. At the time of submission of these stipulations the plaintiff's only evidence of exposure of Leo Goldsby to asbestos relates to his service on the U.S.S. Ozbourne in 1949.

It is thus clear that during at least nine of the eleven months of Leo Goldsby's Naval service, he served at sea as a machinist's mate on board the U.S.S. Ozbourne, with duties which included pipe repair in the boiler room that required cutting through asbestos insulation.

Plaintiff, for reasons that are not apparent, relies solely on the Fourth Circuit's decision in *White v. Johns-Manville Corp.*, 662 F.2d 234 (4th Cir.1981), *cert. denied*, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). Professor Moore pointed out on page 227, ¶ .325[3] of the Supplement to Volume 7A of Moore's Federal Practice, that the reasoning of the Fourth Circuit in *White* and the reasoning of the Fifth Circuit in *Sperry-Rand Corp. v. Radio Corp. of America*, 618 F.2d 319 (5th Cir.1980), was expressly rejected by the Ninth Circuit in *Owens-Illinois, Inc. v. United States Dist. Court*, 698 F.2d 967 (9th Cir.1983), and *Keene Corp. v. United States*, 700 F.2d 836 (2nd Cir.1983); cases upon which defendants rely.

The Fifth Circuit opinion in *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 11 (1st Cir.1983), disagreed, at least in part, with the analysis of the cases decided by the Second, Fourth, and Ninth Circuits but concluded for reasons fully stated that "[I]t appears that personal injuries to seamen and others doing seamen's work do fall within the traditional concerns of admiralty law and are claims over which admiralty tort jurisdiction would be proper." *Austin*, however, held on its facts that admiralty law did not apply to plaintiff's claim in that case for the reason that the ships upon which he worked were out of navigation and that the repair work being accomplished in dry dock required special equipment and skills other than that usually performed by seamen. *See also Lowe v. Ingalls Shipbuilding, A Div. of Litton*, 723 F.2d 1173 (5th Cir.1984), in which all of the above cases are discussed, in support of the Fifth Circuit's ultimate holding that the plaintiff's complaint in that case failed to establish either admiralty, diversity, or federal question jurisdiction.

*Vaughan v. Johns-Manville Corp.*, 662 F.2d 251 (4th Cir.1981), a case cited by neither side, is the closest case on its facts to the stipulated facts in the case at bar. The Fourth Circuit noted in that case that:

"Vaughan had served as a boiler tender in the United States Navy during his 30-year career, and throughout most of his military career he had installed and removed asbestos insulation materials manufactured and distributed as maritime asbestos products." *Id.* at 252. The Court also stated that, on the facts, that Vaughan "from 1969 until his retirement in September, 1974, ... continued to be exposed to asbestos materials in the performance of his naval duties while stationed at the Norfolk Naval Shipyard in Portsmouth, Virginia." *Id.*

Judge Widener's concurring opinion in both *White* and *Vaughan,* which was decided the same day that *White* was decided, took note of the not uncomplicated question presented in a case, such as this case, where it is apparent that admiralty jurisdiction is established in regard to part but not all of a particular plaintiff's claim. In *White* for example, Judge Widener noted that plaintiffs' claim that at least 90% and as much as 97% of their exposure to the manufacturers' products occurred on navigable waters. He accordingly based his concurrence with the majority's admiralty jurisdiction conclusion for the reason that: "Given this overwhelming predominance of exposure arising in the proper maritime situs, and especially taking into account that no issue has been made of the extent of the exposure on navigable waters, I would agree that the entirety of the plaintiffs' tort claims are properly cognizable in admiralty." *White, supra,* 662 F.2d at 242. In *Vaughan,* however, Judge Widener would have remanded the case to the district court for "a more discriminating inquiry into the jurisdiction of district court" for the reason that "at least the last five years of employment of the plaintiff's decedent occurred on land" rather than at sea. *Vaughan, supra,* 662 F.2d at 253.

*Owens-Illinois, supra,* 698 F.2d at 971, a case upon which defendants place great reliance, noted that in that case, "The record is clear that certain of the asbestos exposures allegedly responsible for plaintiff's injuries could not be brought before the district court in admiralty" and that "[d]iversity of citizenship is the sole basis for federal jurisdiction over these claims." The Ninth Circuit accordingly held:

> The right to a jury trial in these circumstances is constitutional in origin and, where common issues of fact are involved, may not be denied by trying the admiralty claims first to the court. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 501, 79 S.Ct. 948, 951–52, 3 L.Ed.2d 988 (1959); *DePinto v. Provident Security Life Insurance Co.,* 323 F.2d 826, 835–36 (9th Cir.1963), *cert. denied sub nom. Gorsuch v. DePinto,* 376 U.S. 950, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964).

The problem of whether plaintiff may have a partial right to jury trial in this case, however, is much more complicated than the *Beacon Theatres* question presented in *Owens-Illinois.* For plaintiff has filed a Rule 9(h) admiralty case designation in this case.

Although plaintiff's complaint attempts to demand a jury trial for plaintiff's entire case under Rule 38 of the Federal Rules of Civil Procedure, such a demand is completely inconsistent with paragraph II of plaintiff's complaint which alleged that:

> This is an action within the Admiralty and Maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333, 46 U.S.C. § 740, 33 U.S.C. § 901 *et seq.,* and the general Admiralty and Maritime law of the United States, and this is an admiralty claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

It is thus apparent that plaintiff's complaint, by its express Rule 9(h) admiralty designation has effectively designated the entire case as a nonjury admiralty case. The consequences of plaintiff's existing Rule 9(h) designation will be discussed in the next part of this memorandum opinion.

### III.

Plaintiff's Rule 9(h) admiralty designation must be considered in light of the fact that plaintiff also attempts to invoke this

Court's diversity jurisdiction conferred by 28 U.S.C. § 1332 by the allegations contained in paragraph I of plaintiff's complaint. That allegation of diversity jurisdiction is, of course, in addition to plaintiff's attempt to invoke this Court's admiralty jurisdiction as conferred by 28 U.S.C. § 1333 as alleged in paragraph II of plaintiff's complaint.

The established procedural rule applicable to this case in regard to a Rule 9(h) identification is stated as follows on page 29 of the supplement to ¶ .59[3] in Volume 7A of Moore's Federal Practice:

> Normally, a claimant with a maritime cause of action can begin his action as a maritime action within the admiralty jurisdiction of the federal district courts— where neither he nor any other parties to the maritime cause of action are entitled to a jury trial—or, if there is an alternative and independent basis for federal jurisdiction, as a non-maritime civil action in the district court, where any party can obtain a jury trial. However, parties to a claim that can be commenced as a maritime or as a non-maritime cause in the federal district court will be precluded from obtaining a jury trial even though the existence of an independent federal jurisdictional ground is properly pleaded *if* the pleading also discloses the existence of a maritime cause of action *and* the claim is identified as one within the maritime jurisdiction of the court. (Emphasis, the author's).

In similar manner, Wright and Miller state the same rule in section 2315, 9 Federal Practice and Procedure 76, as follows:

> If jurisdiction can alternatively be based on a federal question, or on diversity and the necessary jurisdictional amount, either party may demand a jury trial *unless plaintiff has chosen to identify the claim as an admiralty or maritime claim, as permitted by Rule 9(h).* If plaintiff exercises that option there will ordinarily be no jury trial. (Emphasis ours).

Professor Moore cited and quoted with approval that portion of Judge Steger's opinion in *Romero v. Bethlehem Steel Corporation,* 368 F.Supp. 890 (E.D.Tex.1974), which stated, in part, that "Even if the plaintiff had amended his complaint to add diversity grounds, the Court finds that his demand for a jury trial would be stricken if his Rule 9(h) admiralty claims remained." Professor Moore then added that: "Of course, amendment of the complaint to eliminate any reference to Rule 9(h) would undoubtedly be sufficient to permit either party to the action to make a timely request for a jury trial of a cause properly within the non-maritime jurisdiction of the federal district court."

*Romero* was affirmed by the Fifth Circuit in 515 F.2d 1249 (5th Cir.1975). Counsel should study both the district court and court of appeals opinions in *Romero* and, in addition, should consult *Harrison v. Flota Mercante Grancolombiana, S.A.,* 577 F.2d 968 (5th Cir.1978); *Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063 (5th Cir.1981); *Fisher v. Danos,* 671 F.2d 904 (5th Cir. 1982); and *T.N.T. Marine Service, Inc. v. Weaver Shipyards,* 702 F.2d 585 (5th Cir. 1983). Study of the district court cases cited by Judge Steger on page 893 of 368 F.Supp. of *Romero* is also appropriate.

### IV.

We have a strong feeling that plaintiff, by inclusion of a jury demand in the caption of the case and by the addendum to plaintiff's complaint actually wants a jury trial. The authorities we have cited in the preceding part of this memorandum opinion establish, however, that as long as plaintiff's Rule 9(h) admiralty designation remains a part of plaintiff's complaint, this Court may be required to try most, if not all, of plaintiff's claim as a nonjury case.

*Anderson v. American Oil Co. of Baltimore, Md.,* 60 F.R.D. 676, 678 (S.D.Ga. 1973), after quoting the same portion of Wright and Miller's section 2315 which we have quoted above, added the following:

> However, resort to Rule 9(h) is not a point of no return for a plaintiff. "The pleader's identification of his claim as an admiralty or maritime claim or his failure

to do so is not an irrevocable election." Federal Practice and Procedure, Wright and Miller § 1314, p. 455. See also *Mazzella v. Pan Oceanica A/S Panama*, D.C., 232 F.Supp. 29. The language of the Rule shows as much. "The amendment of a pleading to add or withdraw an identifying statement is governed by the principles of Rule 15."

Chief Judge Lawrence pointed out in *Anderson* that leave to amend should be granted freely in connection with a Rule 15 motion and stated that: "If plaintiff desires to amend so as to restrict jurisdiction solely to diversity of citizenship (28 U.S.C. § 1332) instead of admiralty jurisdiction (§ 1333), leave to do so will be granted." *Id.* at 679.

■ While we indicate that we likewise would grant plaintiff leave to file an amendment to her original complaint which would eliminate the allegations of paragraph II of plaintiff's original complaint, we believe it is important to learn at this time whether plaintiff actually wants this case processed as a non-jury admiralty case in accordance with her present Rule 9(h) designation or whether plaintiff wants to file a Rule 15 motion to amend to strike her Rule 9(h) identification and thus make clear that plaintiff seeks to invoke only this Court's diversity jurisdiction. Accordingly, an order will be entered in regard to plaintiff's present Rule 9(h) designation.

## V.

Although counsel for the defendants indicated at the discovery conference that a substantial statute of limitations question was presented in this case, no such question was raised in defendants' joint motion or supporting brief. The Court must therefore assume that defendants agree that plaintiff's action is timely filed. The briefs filed by the parties reflect their further agreement in regard to the conflict of law question presented; all parties agree that if diversity jurisdiction is ultimately invoked by plaintiff, that the law of Missouri is applicable to plaintiff's cause of action.

Plaintiff's present complaint, read broadly, alleges that plaintiff is entitled to recover under theories of enterprise liability, market-share liability, and alternative liability and assumes that such theories of liability are recognized under the law of Missouri. We are attaching a copy of an opinion and order of transfer to the Supreme Court of Missouri entered January 10, 1984 entered by the Missouri Court of Appeals, Eastern District, in *Susan Zafft v. Eli Lilly & Co., et al.*, No. 46714. We are advised that the transfer was accepted by the Supreme Court of Missouri and that the case, in fact, was argued approximately two months ago. We are satisfied that the opinion of the Supreme Court of Missouri in the DES litigation will indicate whether plaintiff's alternative theories of liability may be maintained as a matter of Missouri law.

■ The fact that the law of Missouri may not be completely settled in regard to plaintiff's alternative theories of liability in particular does not support a continuation of this Court's earlier order which stayed discovery until the determination of the pending motion. The files and records show that pursuant to the Rule 16(b) and Rule 26(f) notice issued January 16, 1984, the defendants presented on March 6, 1984 a proposed discovery plan which would have completed discovery within a relatively short period of time. That was not an agreed discovery plan as contemplated by the notice but defendant's proposal establishes that discovery in this case is not a particularly difficult task. An order will therefore be entered under which counsel will be required to prepare an agreed plan and schedule of discovery in accordance with the new time schedule set forth in a new Rule 16(b) and Rule 26(f) notice.

## VI.

For the reasons stated, it is

ORDERED (1) that defendants' joint motion to dismiss or in the alternative for summary judgment should be and the same is hereby denied. It is further

ORDERED (2) that on or before August 24, 1984, plaintiff shall prepare, serve, and file either (a) a Rule 15 motion to amend her complaint by eliminating the present Rule 9(h) admiralty designation in accordance with what we have above stated or (b) file a response to this order which shall definitively state that plaintiff intends to retain the Rule 9(h) admiralty designation contained in paragraph II of plaintiff's original complaint and to invoke the section 1333 admiralty jurisdiction conferred on this Court rather than the diversity jurisdiction conferred by section 1332. It is further

ORDERED (3) that the parties shall file an agreed plan and schedule of discovery in accordance with the new Rule 16(b) and Rule 26(f) notice filed and forwarded to counsel this day.

### APPENDIX

IN THE MISSOURI COURT OF APPEALS
EASTERN DISTRICT
DIVISION TWO

| | |
|---|---|
| SUSAN ZAFFT, | ) |
| Plaintiff-Appellant, | ) |
| vs. | ) No. 46714 |
| ELI LILLY & CO., et al., | ) Appeal from the Circuit Court of the City of St. Louis. |
| Defendants-Respondents, | ) |
| JANCIE KEUNE and DAVID KEUNE, | ) Hon. Carl R. Gaertner |
| | ) OPINION FILED: January 10, 1984 |
| Plaintiffs-Appellants, | ) |
| vs. | ) |
| ELI LILLY & CO., et al., | ) |
| Defendants-Respondents. | ) |

Industry-wide liability case. Transferred to the Supreme Court of Missouri.

Consolidated appeals from summary judgments. These appeals involve what is commonly referred to as DES litigation. Plaintiffs alleged synthetic estrogen (DES), was widely prescribed in the 1940's and 1950's to prevent miscarriages. As the result of ingestion of DES in Missouri by plaintiffs' respective mothers during pregnancy, the female offspring (plaintiffs) developed cancer of their reproductive system.

Plaintiffs further alleged the thirteen defendants (drug manufacturers) actively promoted and sold DES, a known cancer producing drug, in Missouri. All thirteen drug manufacturers constituted substantially all of the known manufacturers who distributed DES in Missouri during the period in question. The DES so distributed to plaintiffs' mothers in Missouri caused the injuries suffered by them. Drug manufacturers were jointly and severally responsible and the injuries were caused by their joint and concurring actions. A good faith effort to determine the particular drug manufacturer responsible for the injuries had met without success.

The question presented is whether an exception applies to a DES products liability case which permits plaintiffs to recover from an alleged non-caring industry and obviates the necessity of plaintiffs' identi-

fying and proceeding against the particular manufacturer of the DES which caused plaintiffs' injuries.

The allegations of the petitions refute plaintiffs' right to recover under the existing products liability law of Missouri. By alleging their inability to identify a particular manufacturer, distributor, or seller of the product which allegedly caused plaintiffs' injuries, plaintiffs have pleaded themselves out of court. Proof that the defendants manufactured or supplied the allegedly defective product is an essential element of a claim based upon this doctrine. Section 402(a), *Restatement (Second) of Torts* (1965), imposes liability upon the *"[o]ne who sells* any product in a defective condition unreasonably dangerous to the use or the consumer ...."* While "seller" has been broadened to include one who furnishes the product under any form of commercial arrangement, *Gabbard v. Stephensons Orchard, Inc.,* 565 S.W.2d 753, 757 (Mo. App.1978), the identity of the supplier and evidence of his acts or omissions which caused the product to be unreasonably dangerous remains a prerequisite to recovery. *Williams v. Ford Motor Co.,* 494 S.W.2d 678, 682 (Mo.App.1973), succinctly states the rule:

Under the facts of this case, it was therefore incumbent upon the plaintiff in carrying her burden of proof to cause the jury to believe that each of the defendants released the car in a defective condition and was therefore liable for her injury.

Accordingly, as to the allegations of the petitions which seek recovery against defendants based upon strict liability in tort, the pleaded admission of inability to identify a particular manufacturer, seller, distributor, or product is fatal.

However, the excellent memorandum opinion of the trial judge, Honorable Carl R. Gaertner, leads us to believe the Supreme Court of Missouri may need to reexamine the existing law. Judge Gaertner set out the case law on DES cases in all jurisdictions. He suggested theories on which recovery may be had. This memorandum opinion is part of the record and need not be set out in this opinion.

We believe the policy question of whether plaintiffs must prove defendants manufactured or supplied the DES presents a question of general interest and importance and warrants a reexamination of the existing law.

The case is therefore transferred to the Supreme Court.

Robert E. Crist
ROBERT E. CRIST, Presiding Judge.

James A. Pudlowski     Judge Concurs
JAMES A. PUDLOWSKI,

Paul J. Simon     Judge Concurs
PAUL J. SIMON,

"Concurring in transfer to Supreme Court."

Robert G. Dowd     Chief Judge Concurs
ROBERT G. DOWD,

Gerald M. Smith     Judge Concurs
GERALD M. SMITH,

John J. Kelly, Jr.,     Judge Concurs
JOHN J. KELLY, JR.,

Joseph G. Stewart     Judge Concurs
JOSEPH G. STEWART,

    Judge Concurs
JAMES R. REINHARD,

Albert J. Stephan, Jr.     Judge Concurs
ALBERT J. STEPHAN, JR.,

Robert O. Snyder     Judge Concurs
ROBERT O. SNYDER,

Harold L. Satz
_____ Judge Concurs _____
HAROLD L. SATZ,

Wm. H. Crandall, Jr.
_____ Judge Concurs _____
WILLIAM H. CRANDALL, JR.,

_____ Judge DID NOT PARTICIPATE _____
CARL R. GAERTNER,

Kent E. Karohl
_____ Judge Concurs _____
KENT E. KAROHL,