ONEBEACON INSURANCE GROUP, f/k/a CGU/International Marine Underwriters, as subrogee of David Janczak; and David Janczak, Plaintiffs,

v.

GREAT LAKES INN MANAGEMENT, INC. d/b/a City Centre Marina; City of Green Bay; and Green Bay Police Department, Defendants.

No. 01–C–0969.

United States District Court, E.D. Wisconsin.

Sept. 21, 2002.

Geoffrey M. Herbon, George M. Velcich, James Saranteas, Steven B. Belgrade, for Plaintiffs.

Attorney for Great Lakes Inn Management, Inc.: James W. Mohr, Jr. Attorney for City of Green Bay and Green Bay Police Department: Jerry H. Hanson, for Defendants.

## DECISION AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

CALLAHAN, United States Magistrate Judge.

### I. BACKGROUND

This action was commenced September 21, 2001, when the plaintiffs, Onebeacon Insurance Group, f/k/a CGU/International Marine Underwriters, as subrogee of David Janczak ("Onebeacon") and David Janczak ("Janczak") filed a complaint in the United States District Court for the Eastern District of Wisconsin. Named as defendants were Great Lakes Inn Management, Inc., d/b/a/ City Centre Marina ("City Centre"), the City of Green Bay ("the City") and the Green Bay Police Department ("the Department"). Initially, the case was randomly assigned to then Chief Judge J.P. Stadtmueller. After all parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(b), it was reassigned to this court for processing. Currently pending before the court is defendant City Centre's motion for judgment on the pleadings, which is now fully briefed and ready for resolution.

According to the complaint, Janczak owned a 37–foot Sea–Ray Sundancer (named "Knot on Time") motor boat. (Compl.¶ 8.) On or about February 25, 2000, Janczak entered into a written Boat Slip Rental Agreement with City Centre. (Compl.¶ 13.) At that time, City Centre was operating a marina on the navigable waters of the Fox River and Green Bay in the City of Green Bay, Wisconsin. (Compl.¶ 10.) City Centre was operating the marina on property owned by the City and pursuant to a management agreement with the City. (Compl.¶ 11.) Prior to July 30, 2000, City Centre had entered into an agreement with the City and/or the Department pursuant to which the City and/or the Department undertook to provide security for, safeguard and protect vessels moored at the Marina being operated by City Centre. (Compl.¶ 12.) In turn, under the terms of the Rental Agreement, City Centre agreed to berth Janczak's vessel at a slip in the Marina and further agreed as follows: "The marina and the Green Bay Police Department will take all reasonable precautions to safeguard the lessee's property." (Compl.¶¶ 14, 15.)

On or about August 2, 2000, Janczak's vessel was "wrongfully taken from said marina by an unknown person without the permission and authority of Janczak and was subsequently discovered burning on the eastern shore of Green Bay approximately three miles off shore." (Compl.¶ 18.) The vessel subsequently sunk in waters approximately 27 feet deep. (Compl.¶ 19.) Pursuant to a hull insurance policy that Onebeacon had on the vessel, Onebeacon paid Janczak the amount of $201,000.00 for the loss and damage to the vessel, its equipment and personal property. (Compl.¶¶ 23.) Onebeacon also in-

curred additional costs as a result of salvage and survey expenses, as well as legal fees. (Compl.¶ 25.) Moreover, Janczak sustained the loss of additional personal items for which he was not compensated by Onebeacon. (Compl.¶ 26.)

The plaintiffs set forth various and several claims against the defendants, including breach of contract, negligence, and bailment. Jurisdiction in this court, however, is premised exclusively on admiralty, pursuant to 28 U.S.C. § 1333. And it is on the jurisdictional question that City Centre's motion for judgment on the pleadings is focused. More precisely, City Centre argues that the facts set forth in the complaint demonstrate that this is not a case properly falling within the admiralty jurisdiction of the federal courts. Thus, City Centre argues that the plaintiffs' complaint should be dismissed.

## II. DISCUSSION

### A. Judgment on the Pleadings

As stated, City Centre has filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. *See* Fed. R. Civ. Pro. 12(c). Rule 12(c) motions are reviewed under the same standard as a motion to dismiss under Rule 12(b). *See Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir.1996). Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that could support his claim for relief." *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993). "Both motions permit a party to request the district court to dispense of the matter at the initial stage of the proceedings. The primary difference between these motions is that a party may file a Rule 12(b) motion before its answer ... A party may move to dismiss the claim under Rule 12(c) '[a]fter the

pleadings are closed but within such time as not to delay the trial.' Fed.R.Civ.P. 12(c)." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 n. 3 (7th Cir.1998).

### B. The Parties' Arguments

According to City Centre, this court does not have admiralty jurisdiction over either the contract or tort claims in this action. Relying principally on *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), City Centre argues that where, as here, "[the] alleged tort is committed on land and does not involve traditional maritime activities such as navigation and commerce, maritime jurisdiction is not invoked, even though the resulting damage may occur on the water." (Def.'s Br. at 3.) Furthermore, with respect to the breach of contract claim, City Centre presents that the contract which was allegedly breached was a "Boat Slip Rental Agreement," which plaintiff Janczak signed for the storage of his boat at an identified slip for the 2000 boating season. (Def.'s Br. at 6.) It is only "maritime contracts" that provide the basis for admiralty jurisdiction. (Def.'s Br. at 6.) And, quoting *Richard Bertram & Co. v. The Yacht, Wanda*, 447 F.2d 966, 967 (5th Cir.1971), City Centre then argues that the "Boat Slip Rental Agreement" is not a "maritime contract" because "[a] maritime contract is one which concerns transportation by sea, relates to navigable waters and concerns maritime employment... The mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court." (Def.'s Br. at 6.)

In response, Onebeacon argues that the court has admiralty jurisdiction over the tort claim. More precisely, relying on the jurisdictional test set forth in *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111

L.Ed.2d 292 (1990), Onebeacon argues that this court has admiralty jurisdiction over the tort claims set forth in the complaint because the activity about which the plaintiffs complain "create[d] a potential hazard for navigation of commercial vessels in that vicinity" and there was "a substantial relationship ... between the activity giving rise to the incident and traditional maritime activity." (Pls.' Br. at 5.)

Onebeacon argues that the court has admiralty jurisdiction over the breach of contract claim as well. This is because "federal admiralty jurisdiction turns solely on whether the contract 'relate[s] to ships in their use as ships or to commerce or transportation in navigable waters.'" (Pls.' Br. at 4) (quoting *Medema v. Gombo's Marina Corp.*, 97 F.R.D. 14, 15 (N.D.Ill.1982)). And a contract for a boat slip satisfies such a nexus requirement. (Pls.' Br. at 4.) Indeed, Onebeacon argues that "[a] boat slip rental is a contract for wharfage, and the Supreme Court has held that 'admiralty jurisdiction ... extends to all contracts, claims, and services essentially maritime, among which are ... wharfage.'" (Pls.' Br. at 4) (quoting *Ex Parte Easton*, 95 U.S. 68, 72, 24 L.Ed. 373 (1877)).

## C. The Tort Claim

■ In *Jerome B. Grubart, Inc. v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the Supreme Court enunciated essentially a three-part test for determining when a case in which a tort claim is alleged falls within the admiralty jurisdiction of the federal court. The Supreme Court held that a court has admiralty jurisdiction over a tort claim if the claim "satisf[ies] conditions both of location and of connection with the maritime activity." *Grubart*, 513 U.S. at 534, 115 S.Ct. 1043. It then proceeded to state that "[a] court applying the location test must determine whether the tort occurred on navigable waters or whether injury suffered on land was caused by a vessel on navigable water." *Id.*

In turn, "[t]he connection test raises two issues. A court, first, must 'assess the general features of the type of incident involved,' ... to determine whether the incident has 'a potentially disruptive impact on maritime commerce' ... Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 363–65, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)).

## 1. The Location

■ As stated previously, City Centre relies heavily on *Executive Jet* in arguing that this court does not have admiralty jurisdiction over the plaintiffs' tort claim. In *Executive Jet*, tort claims arose out of the wreck of an airplane that collided with a flock of birds just after takeoff on a domestic flight and fell into the navigable waters of Lake Erie. The Supreme Court held that merely because the plane fell into navigable waters did not provide a basis for federal admiralty jurisdiction over the tort claims; there had to be more. In describing its holding in *Executive Jet*, the Supreme Court stated in *Grubart*, "[w]e held that 'claims arising from airplane accidents are not cognizable in admiralty' despite the location of the harm, unless 'the wrong bear[s] a significant relationship to traditional maritime activity.'" *Grubart*, 513 U.S. at 533, 115 S.Ct. 1043.

To be sure, the plaintiffs in the case at bar allege that the defendants were negligent in the manner in which they safeguarded the marina and that, as a result of such negligence, the "Knot on Time" was stolen from the marina, taken out into navigable waters, and set ablaze. The al-

legations thus would seem to suggest that, just as in *Executive Jet*, the negligent acts (or negligent failures to act) did not occur on navigable waters; instead, they occurred in the marina.

■ That the negligence which led to the theft of the "Knot on Time" may have occurred on land, however, does not necessarily render this case one for which there is no admiralty jurisdiction. This is so because the negligent acts (or negligent failures to act) are only part of the total picture. In determining where the "tort occurred," one must also consider the *effects* of the negligence and where those effects occurred. Indeed, in *Executive Jet*, the Supreme Court, stated, "[u]nder the locality test, the tort occurs where the alleged negligence took effect." *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 266, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). And when one considers that the effects of the alleged negligence in this case were (1) the taking of the boat from the marina and (2) setting it ablaze in navigable waters, it is quite clear that the locality test is satisfied.

In this respect, the instant case is similar to those cases (in which admiralty jurisdiction was found to exist) in which product liability claims were asserted against land-bound defendants who allegedly supplied defective products that were installed in vessels and which caused injury or damage while the vessels were on the high seas. *See Mink v. Genmar Indus., Inc.*, 29 F.3d 1543, 1547 (11th Cir.1994) (injured passenger claimed vessel was defectively designed for not providing adequate handholds or seats.); *Hassinger v. Tideland Elec. Membership Corp.*, 781 F.2d 1022 (4th Cir.1986) (defective mast); *Sperry Rand Corp. v. Radio Corp.*, 618 F.2d 319 (5th Cir.1980) (defective steering gyro); *Jones v. Bender Welding & Mach. Works*, 581 F.2d 1331 (9th Cir.1978) (defective design caused damage to fishing vessel).

## 2. Connection with Maritime Activity

To reiterate, "[t]he connection test raises two issues. A court, first, must 'assess the general features of the type of incident involved,' ... to determine whether the incident has 'a potentially disruptive impact on maritime commerce' ... Second, a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Grubart*, 513 U.S. at 534, 115 S.Ct. 1043 (quoting *Sisson v. Ruby*, 497 U.S. 358, 363–65, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)).

■ In addressing the first prong of the "maritime connection enquiries" a court is to ask "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Id.* at 538–39, 115 S.Ct. 1043. The first prong goes to the potential effects, not to the particular facts of the incident; that is to say, it goes to whether the general features of the incident were likely to disrupt commercial activity. *Id.* "The first *Sisson* test turns, then, on a description of the incident at an intermediate level of possible generality." *Id.*

Following *Sisson*, the "general features" of the incident at issue here may be described as the burning and sinking of a boat in the navigable waters of Green Bay. Describing the incident in such fashion leads to the inescapable conclusion that it falls within a class of incidents that pose more than a fanciful risk to commercial shipping. Indeed, in *Sisson* a fire that had begun on a noncommercial vessel at a marina located on a navigable waterway was found by the Supreme Court to have a potentially disruptive impact on maritime commerce, "as it can spread to nearby commercial vessels or make the marina inaccessible to such vessels. Indeed, fire is one of the most significant hazards facing commercial vessels." *Sisson*, 497 U.S.

at 362, 110 S.Ct. 2892. So too, fire aboard a noncommercial vessel which causes that vessel to sink in a commercial waterway quite clearly poses more than a fanciful risk to commercial shipping. At a minimum, commercial vessels would need to adjust their course of direction so as to avoid colliding with the burning vessel. Such being the case, the first prong of the maritime connection enquiry is satisfied.

 The second prong of the enquiry requires the court to determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. In this connection the court is to "ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Grubart,* 513 U.S. at 539–40, 115 S.Ct. 1043. Most tellingly, the Court in *Grubart* went on to state that "[n]avigation of boats in navigable waters clearly falls within the substantial relationship, *Foremost [Ins. Co. v. Richardson],* 457 U.S., at 675, 102 S.Ct., at 2658–2659; *storing them at a marina on navigable waters is close enough ...." Id.* at 540, 115 S.Ct. 1043 (emphasis provided). Given that the alleged negligence in this case centers upon the defendants' failure to maintain proper security for boats that they stored at a marina on the navigable waters of Green Bay, the second prong of the maritime connection enquiry is satisfied.

In conclusion, I am satisfied that this court has admiralty jurisdiction over the tort claims that are set forth in the plaintiffs' complaint. Because I have determined that the court has admiralty jurisdiction over the tort claims, it is unnecessary for me to decide whether the plaintiffs' breach of contract claim would provide an independent basis for invoca-

tion of the court's admiralty jurisdiction. In any event, the court at a minimum would have supplemental jurisdiction over such claim pursuant to 28 U.S.C. § 1367(a).

**NOW THEREFORE IT IS OR-DERED** that defendant City Centre's motion for judgment on the pleadings be and hereby is **DENIED.**