**SPERRY RAND CORPORATION and Liberty Mutual Insurance Company, Plaintiffs-Appellants,**
v.
**RADIO CORPORATION OF AMERICA, Texas Instruments, Inc. and Electro-Switch Corporation, Defendants-Appellees.**

No. 78–1703.

United States Court of Appeals, Fifth Circuit.

June 2, 1980.

**320**

Lawrence J. Ernst, William J. Sommers, Jr., New Orleans, La., for plaintiffs-appellants.

Montgomery, Barnett, Brown & Read, A. Gordon Grant, Jr., Stanley McDermott, III, New Orleans, La., for Radio Corp. of America.

Johnston & Duplass, Robert M. Johnston, New Orleans, La., for Texas Instruments, Inc.

Hammett, Leake, Hammett, Hulse & Nelson, Eldon T. Harvey, III, Joseph G. Gallagher, Jr., New Orleans, La., for Electro-Switch Corp.

Before GODBOLD, GARZA and RANDALL, Circuit Judges.

GARZA, Circuit Judge:

On November 15, 1974, the M/V RENE J. CHERAMIE (vessel) was grounded and involved in a collision in the Houston Ship Channel. The grounding and collision were allegedly caused by a defect in the gyro-pilot steering system installed aboard the vessel. The vessel owners filed suit against the system's manufacturer, Sperry Rand Corporation (Sperry) and its insurer, Liberty Mutual Insurance Co. (Liberty). As the case developed for trial, Sperry determined the failure was caused by defects in various component parts[1] manufactured by Radio Corporation of America (R.C.A.), Texas Instruments, Inc. (T.I.) and Electro-Switch Corporation (appellees-defendants). On the eve of trial, Sperry and Liberty settled the case with the owners, and the owners assigned and subrogated all of their rights to Sperry and Liberty.

Sperry and Liberty then brought this products liability action for economic loss against the above named defendants.[2] After some initial problems with diversity jurisdiction, the plaintiffs-appellants based jurisdiction of their suit solely on admiralty jurisdiction. The District Court dismissed their case for lack of admiralty jurisdiction. Citing *Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Court held that the defendants' manufacture of small component parts, not specifically manufactured for incorporation in marine systems, lacked little

---

1. The allegedly defective parts involved include a triac semi-conductor rectifier manufactured by R.C.A., a circuit amplifier manufactured by T.I., and a switch manufactured by Electro-Switch.

2. On appeal, Sperry argues that jurisdiction exists in its behalf, both as a subrogee to the vessel owners' rights *and* in its own right as a purchaser of these component parts. For purposes of admiralty jurisdiction, we see no controlling significance in distinguishing either position.

relationship to traditional maritime activity, and, therefore, failed to meet the "locality-plus" test set forth in *Executive Jet*. The issue presented in this appeal is whether a products liability claim, arising from damage to a vessel on navigable waters, asserted by the manufacturer of a marine gyro-pilot steering system against the manufacturers of various electrical components used in its manufacture, is cognizable in admiralty.

In *Executive Jet*, the Supreme Court held that mere locality of injury on navigable waters is not enough to confer admiralty jurisdiction and that "It is far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activity." 409 U.S. at 268, 93 S.Ct. at 504. What the Court meant by "wrong" in the context of a products liability case was not defined, but defendants-appellees argue that, because this case is a products liability action, the "wrong" committed, if any, occurred by defective manufacture and would have been actionable whether or not the injury occurred on navigable waters or on land. Since these component parts are manufactured by the millions and are used in virtually every conceivable aspect of electronic equipment, defendants-appellees argue that the activity of their manufacture bears no *significant* relationship to traditional maritime activity and that a finding of jurisdiction would ignore the purpose of restricting admiralty jurisdiction as set forth in *Executive Jet*. Defendants concede that admiralty jurisdiction existed in the owners' suit against Sperry, since Sperry had manufactured a uniquely maritime product—a gyro-pilot marine steering system. But defendants contrast that case against this one in that Sperry's suit against them involves no maritime activity, but is merely an action seeking indemnity or contribution based on products liability principles. However, the defendants cannot cite one case where the requirement of

"significant relationship to traditional maritime activity", added by *Executive Jet*, was not satisfied by the sinking of, or inflicting of damage upon, a marine vessel on navigable waters. Indeed, all of the pertinent cases before and since *Executive Jet* have held that, so long as the place of the injury to a vessel occurs upon navigable waters, the fact that the negligent act may have occurred on shore is of no relevance.[3] In this case, the plaintiffs' predecessor in interest was engaged in maritime activity, the injury was upon a vessel, the location of the injury was on navigable waters, and the instrumentality causing the injury was defective components in a marine steering mechanism. In *Jig, III Corporation v. Puritan Marine Insurance Underwriters Corporation*, 519 F.2d 171 (5th Cir. 1975), the purchaser-owner of a shrimp boat brought an action against the manufacturer on the grounds that it had negligently designed and constructed the vessel's shaft assembly and that this negligence was a proximate cause of the vessel's sinking. This Court noted:

> When an ocean-going shrimpboat sinks in 15 fathoms of water in the Gulf of Mexico and the sinking is allegedly tortious, there is maritime locality plus a significant relationship to traditional maritime activity, and the tort, if recognized by the law, is maritime in nature. See *Executive Jet Aviation, Inc. v. Cleveland* . . This would be true even though the conduct complained of may have been negligent construction or defective design and may have occurred ashore. See *Watz v. Zapata Off-Shore Company*, [5 Cir. 1970, 431 F.2d 100] . . . (citations omitted). 519 at 174.

Defendants-Appellees strongly argue that a finding of admiralty jurisdiction in this case would extend admiralty jurisdiction to include the manufacture of *any product* which eventually finds its way into a maritime situation, no matter how remote in

---

**3.** *In Re: Motor Ship Pacific Carrier*, 489 F.2d 152 (5th Cir. 1974); *Kelly v. Smith*, 485 F.2d 520 (5th Cir. 1973); *Dudley v. Bayou Fabricators, Inc.*, 330 F.Supp. 788 (S.D.Ala.), aff'd sub

nom. *Dudley v. Smith*, 504 F.2d 979 (5th Cir. 1974). *See also* "The Other Half of *Executive Jet*", 57 Tex.L.Rev. 977 at 1001–04.

terms of function or distribution, and would thereby defeat the "locality-plus" test of *Executive Jet.* Plaintiffs-Appellants counter that to uphold the District Court's finding would, in effect, require that manufacturers of component parts utilized on vessels will be subject to admiralty jurisdiction only if it can be shown that those parts are manufactured exclusively for marine use. Faced with these alternatives, we hold that a finding of jurisdiction will best serve the purpose of admiralty jurisdiction to protect "the . . . national interest in uniformity of law and remedies for those facing the hazards of waterborne transportation." *Kelly v. Smith*, 485 F.2d 520, 526 (5th Cir. 1973). The injustice in a contrary result becomes more apparent when one considers that an affirmance of the District Court would have precluded the vessel owners from having brought suit in Federal District Court on the basis of admiralty jurisdiction directly against the manufacturers of the component parts, if an investigation had revealed to them that the components were the real culprits causing the damage to the M/V RENE J. CHERAMIE.

REVERSED.