# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30299

United States Court of Appeals
Fifth Circuit

**FILED**

November 24, 2014

Lyle W. Cayce
Clerk

In Re:
LOUISIANA CRAWFISH PRODUCERS

Consolidated with:
Nos. 13-30338, 13-30341, 13-30345, 13-30346, 13-30347, 13-30349, 13-30352, 13-30353, 13-30354, 13-30355, 13-30356, 13-30367, 13-30370, 13-30371, 13-30372, 13-30375, 13-30376, 13-30382, 13-30383, 13-30385, 13-30387, 13-30393, 13-30394, 13-30395, 13-30397, 13-30399, 13-30400, 13-30401, 13-30403, 13-30404, 13-30405, 13-30406, 13-30407, 13-30408, 13-30409, 13-30410, 13-30419, 13-30420, 13-30421, 13-30424, 13-30426, 13-30428, 13-30425, 13-30430, 13-30432, 13-30433, 13-30434, 13-30435, 13-30436, 13-30437, 13-30439, 13-30440, 13-30441, 13-30442, 13-30443, 13-30444, 13-30446, 13-30447, 13-30448, 13-30454, 13-30456, 13-30460, 13-30462, 13-30463, 13-30465, 13-30466, 13-30467, 13-30468, 13-30469, 13-30470, 13-30482, 13-30485, 13-30486, 13-30487, 13-30497, 13-30499, 13-30506, 13-30523, 13-30525, 13-30526, 13-30533, 13-30535, 13-30539

Appeals from the United States District Court
for the Western District of Louisiana

Before SMITH, BARKSDALE, and HAYNES, Circuit Judges.

PER CURIAM:

The Louisiana Crawfish Producers Association–West and some of its

No. 13-30299

members, commercial fishermen operating in the Atchafalaya Basin in Louisiana, sued a number of oil and gas companies and their insurers, claiming aspects of the companies' pipeline activities impeded water flows and commercial navigation, causing economic damages. The plaintiffs appeal a dismissal for failure to state a claim in favor of two defendants, Dow Intrastate Gas Company ("DIGC") and Willbros RPI, Inc. ("Willbros"). We affirm.

## I.

The plaintiffs sued in Louisiana state court under state law and general maritime law. After dismissal of the state-law claims, one of the defendants removed to federal court. That court denied a Rule 12(b)(6) motion to dismiss maritime tort claims against the defendants alleged to have engaged in dredging. It dismissed maritime tort claims against the defendants alleged to have engaged in oil and gas exploration but not dredging, which included DIGC and Willbros. The court declined to dismiss successor-in-interest claims against most of the defendants alleged to be successors of entities that had engaged in dredging. Inconsistently with its treatment of some other defendants, however, the court did not discuss successor-in-interest claims against DIGC even though the complaint claimed that DIGC is the successor to Dow Chemical Company ("Dow"), a defendant alleged to have engaged in dredging. Nevertheless, having dismissed the maritime tort claims against DIGC, the court dismissed DIGC as a defendant.

The plaintiffs appealed. While the appeal was pending, most of the dismissed defendants settled. The only defendants that remain parties to the appeal are DIGC and Willbros.

The specific allegations against DIGC and Willbros fall into two categories. First, the plaintiffs claim DIGC and Willbros engaged in activities that constitute maritime torts. They allege DIGC placed cement mats on exposed

No. 13-30299

sections of an existing pipeline, impeding water flows and commercial navigation. They claim Willbros built a pipeline on an existing spoil bank that it had leveled using bulldozers, obstructing gaps in the spoil bank and thereby impeding water flows and commercial navigation. In the plaintiffs' view, both defendants' activities violated the applicable Army Corps of Engineers ("Army Corps") permits. The plaintiffs do not contend DIGC or Willbros used vessels in any of these projects.

Second, the plaintiffs claim that Dow is the "predecessor" to DIGC and that DIGC operated under an Army Corps permit originally issued to Dow. Plaintiffs provide no further information about the relationship between DIGC and Dow, but the defendants acknowledge in their brief that Dow and DIGC have a corporate parent-subsidiary relationship.

## II.

We review *de novo* a dismissal for failure to state a claim, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (footnote and citations omitted). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.*

## III.

To state a claim for a maritime tort, the plaintiff must allege facts

3

No. 13-30299

sufficient to satisfy the "location test" and "connection test."[1] The location test is satisfied if the tort occurred on navigable waters or if the injury occurred on land but was caused by a vessel on navigable waters. *Grubart*, 513 U.S. at 534. The tort "occurred on" navigable waters if the harm "took effect" there. *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 456 (5th Cir. 1999) (per curiam). The connection test is satisfied if two conditions are met. *Grubart*, 513 U.S. at 534. First, "the general features of the type of incident involved" must have "a potentially disruptive impact on maritime commerce." *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 363, 364 n.2 (1990)). The court uses "a description of the incident at an intermediate level of possible generality," *id.* at 538, that is neither too broad to distinguish among cases nor too narrow to recognize potential effects on maritime commerce, *id.* at 538–39. Second, "the general character of the activity giving rise to the incident" must show "a substantial relationship to traditional maritime activity." *Id.* at 534 (quoting *Sisson*, 497 U.S. at 365, 364 & n.2) (internal quotation marks omitted). The court considers "whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* at 539–40.

The location test is easily satisfied: The plaintiffs allege the defendants' activities impeded water flows and commercial navigation, meaning the harm "took effect" on navigable waters. *See Egorov*, 183 F.3d at 456. Likewise, the

---

[1] *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (announcing test for admiralty jurisdiction); *May v. Transworld Drilling Co.*, 786 F.2d 1261, 1265 (5th Cir. 1986) ("The test to determine the existence of a cause of action in maritime tort is identical with that applied to determine jurisdiction in admiralty."). Jurisdiction is not at issue here: One of the original defendants removed under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *see* 9 U.S.C. § 203, so there is jurisdiction regardless of whether there would be admiralty jurisdiction over the claims against DIGC and Willbros.

first prong of the connection test is met: "[T]he general feature[] of the type of incident involved," *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 363), is the obstruction of water flows. Although such obstruction does not always disrupt maritime commerce, it has the potential to do so, which is all that is required. *See id.*

The plaintiffs have not alleged facts sufficient to satisfy the second prong of the connection test, however. The key issue is the appropriate level of generality at which to describe "the general character of the activity giving rise to the incident," *id.* (quoting *Sisson*, 497 U.S. at 365, 364) (internal quotation marks omitted). The plaintiffs urge the general character of the activity is "negligent/intentional construction activity resulting in the obstruction of navigable waters with spoil," while the defendants maintain it is "pipeline construction and repair," as the court found.

The latter description is the better one. The plaintiffs' characterization conflicts with *Sisson*'s instruction, 497 U.S. at 364, "that the relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose," and warning not "to focus more particularly on the causes of the harm," *id.* at 365. Plaintiffs' description is merely a statement of the cause of the harm. Were we to use the characterization "negligent/intentional construction activity resulting in the obstruction of navigable waters with spoil," there would be no more specific cause.[2] As a result, "the general character of the activity giving rise to the incident"[3] is "pipeline construction and repair."[4]

---

[2] *Cf. Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 268–74 (1972) (finding that general character was air travel, not aircraft crashing into navigable waters).

[3] *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 365, 364) (internal quotation marks omitted).

[4] The only case the plaintiffs cite in support, *Apache Corp. v. Global Santa Fe Drilling*

No. 13-30299

The only remaining issue is whether "pipeline construction and repair" shows "a substantial relationship to traditional maritime activity."[5]  The case-law shows it does not,[6] so the plaintiffs have failed to state a claim for a maritime tort against DIGC and Willbros.

## IV.

The general rule of corporate-successor liability is that a corporation that purchases another corporation "is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability." *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n.5 (1973).  We have not addressed which test should govern corporate-successor liability in maritime-tort cases, but the plaintiffs have offered no reason to depart from the *Golden State* rule,[7]

---

*Co.*, 832 F. Supp. 2d 678 (W.D. La. 2010), *aff'd sub nom. Apache Corp. v. Global Santa Fe Drilling Co.*, 435 F. App'x 322 (5th Cir. 2011) (per curiam), is distinguishable.  There, the plaintiff alleged the defendant had negligently secured its drilling rig during a hurricane, causing it to allide with the plaintiff's platform.  *Id.* at 682–83.  The court described the general character of the activity as "the activities necessary to secure a vessel during a storm," not "oil and gas activities."  *Id.* at 688.  That characterization was appropriate because the oil and gas activity did not "giv[e] rise to the incident."  *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 364) (internal quotation marks omitted).  The outcome would have been the same had the rig been, say, a fishing vessel.  In the instant case, the oil and gas activity was a link in the causal chain even though it was not the ultimate cause of the harm.

[5] *Grubart*, 513 U.S. at 534 (quoting *Sisson*, 497 U.S. at 364 n.2) (internal quotation mark omitted).

[6] *See Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 425 (1985); *cf. Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 352 (5th Cir. 1999) (platform construction and repair).

[7] The plaintiffs' reliance on *Sperry Rand Corp. v. Radio Corp. of Am.*, 618 F.2d 319 (5th Cir. 1980), is misplaced.  There, the owners of a vessel involved in a grounding and collision caused by a defective steering system sued its manufacturer, Sperry Rand, which then sued the manufacturers of component parts.  *Id.* at 320.  There were no claims based on corporate-successor liability.  The owners brought a tort claim against Sperry Rand, whose claim against the manufacturers was based on an express indemnification agreement.  *See id.*

6

and other courts considering the issue have used that general approach.[8] Accordingly, we adopt the *Golden State* rule where a defendant is alleged to be a corporate successor to a maritime tortfeasor but is not accused of having engaged in tortious conduct.

The plaintiffs' allegations that Dow is the "predecessor" to DIGC and that DIGC operated under an Army Corps permit originally issued to Dow do not show that an exception to *Golden State*'s default rule of nonliability plausibly applies. Without more, they have failed to state a claim for successor liability against DIGC.

AFFIRMED.

---

[8] *See Lyons v. Rienzi & Sons, Inc.*, 863 F. Supp. 2d 213, 225–26 (E.D.N.Y. 2012), *reconsidered in part*, No. 09-CV-4253, 2012 WL 1339442 (E.D.N.Y. Apr. 17, 2012); *Royal Ins. Co. v. Smatco Indus. Inc.*, 201 B.R. 755, 757 (E.D. La. 1996).