# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50448

United States Court of Appeals
Fifth Circuit

**FILED**

March 27, 2017

Lyle W. Cayce
Clerk

MEREDITH MORRIS; JEFFREY MORRIS,

> Plaintiffs - Appellants

v.

MICHAEL J. THOMPSON,

> Defendant - Appellee

Appeals from the United States District Court
for the Western District of Texas

Before SMITH, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Air Force Captain Meredith Morris and her husband Jeffrey sued another Air Force Captain, Michael Thompson, for injuries Captain Morris sustained on Randolph Air Force Base. Thompson filed a motion to dismiss for lack of subject-matter jurisdiction under the *Feres* doctrine, arguing that the injuries occurred incident to military service. The district court granted the motion. We AFFIRM.

No. 16-50448

FACTUAL AND PROCEDURAL BACKGROUND

The incident at issue occurred on Randolph Air Force Base on May 20, 2011, during "Roll Call." According to Thompson, Roll Call is a squadron-scheduled event, while Morris characterizes it as "unofficial" and "non-compulsory." The parties agree that Roll Call is designed to foster camaraderie and serve team-building purposes by allowing pilots the opportunity to come "together to share their experiences and tell stories." The date and location of the incident are the only facts on which the parties agree.

Meredith Morris ("Morris" denotes Captain Morris and not her husband) claims that she was ordered to physically restrain Thompson during Roll Call when he displayed insubordinate behavior toward superior officers. As a result of this restraint, she claims Thompson grabbed her and "threw her to the ground," which caused her to hit her head on the concrete. During the attack, Thompson "yelled pejorative, insulting, and threatening language" and subsequently choked Morris until she was unable to breathe. Before the attack ended, Morris claims Thompson "pushed her down with such force that her head again hit the concrete floor." Morris alleges Thompson was intoxicated during their altercation, which Thompson denies.

Thompson has a different story. He claims that while he was talking to others, Morris attacked him from behind, while several other servicemembers attacked him from the front. The force of the attack, he says, caused him to fall backward and land on Morris. His assailants then attempted to "duct-tape [him], head and all, to the concrete floor." According to Thompson, he had recently suffered a traumatic brain injury at the time of the incident. During his rehabilitation, he had learned to protect his head because "impacts to his brain during recovery could have [had] catastrophic, if not deadly,

No. 16-50448

consequences." He thus alleges that any violent reaction on his part was defensive in nature.

Morris also claims injuries. She says the attack caused severe damage to her head, neck, and shoulders, which rendered her unable to fly. She also claims medical expenses, lost wages, and lost earning capacity, while her husband claims loss of consortium. Thompson, though, contends that Morris did not sustain any apparent injury at the time of the incident, nor did he observe her receiving medical treatment at that time.

The Morrises filed an administrative claim with the Air Force in May 2013, but it was denied. They then sued the United States in federal court in December 2013. That suit was dismissed in May 2014 due to application of the *Feres* doctrine, which we will later discuss in detail. That dismissal is not before us today.

A few days after they filed the administrative claim, the Morrises sued Thompson in his individual capacity in Texas state court, alleging various tort claims. Thompson did not receive service of process until October 2014. Thompson timely removed the case to the Western District of Texas based on diversity of citizenship. Thompson filed a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). He argued the case was nonjusticiable under the *Feres* doctrine because it is an action between military service members arising from activities occurring incident to service. The district court agreed and dismissed. The Morrises filed a timely notice of appeal.

## DISCUSSION

We review *de novo* the district court's grant of a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *Ramming v. United States*, 281

No. 16-50448

F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* When ruling on the motion, the district court may rely on the complaint, undisputed facts in the record, and the court's resolution of disputed facts. *Id.* The motion should be granted only if it appears certain the plaintiff cannot prove any set of facts that would entitle her to recovery. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The district court's application of the *Feres* doctrine is also a question of law that earns *de novo* review. *Hayes v. United States ex rel. United States Dep't of Army*, 44 F.3d 377, 378 (5th Cir. 1995).

The Morrises present these arguments: (1) the *Feres* doctrine does not bar state-law claims heard in federal court under diversity jurisdiction, and, regardless, the *Feres* doctrine does not apply as between members of the same rank; (2) the *Feres* doctrine is unconstitutional; and (3) at least Jeffrey Morris, a civilian, may sue Thompson for loss of consortium.

*(1) Applicability of* Feres *to Claims Brought Under State Law and by Servicemembers of the Same Rank*

The *Feres* doctrine is a narrow exception to tort liability under federal statute: "[T]he Government is not liable under the Federal Tort Claims Act [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950); *see also Meister v. Texas Adjutant Gen.'s Dep't*, 233 F.3d 332, 336 (5th Cir. 2000). The *Feres* Court held the FTCA waived sovereign immunity, "putting the United States government in the same position as any other defendant." *Meister*, 233 F.3d at 336.

4

No. 16-50448

After *Feres*, the Supreme Court "authorized a suit for damages against federal officials whose actions violated an individual's constitutional rights . . . ." *Chappell v. Wallace*, 462 U.S. 296, 298 (1983) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1970)).  In *Chappell*, though, the Court limited the *Bivens* remedy by holding "that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Id.* at 305.  The Court later reaffirmed the applicability of the *Feres* incident-to-service test, requiring courts to abstain from interfering in cases arising under such circumstances. *United States v. Stanley*, 483 U.S. 669, 683–84 (1987).

This court has categorized the *Feres* doctrine as one of justiciability. *Filer v. Donley*, 690 F.3d 643, 648–50 (5th Cir. 2012).  Although the Supreme Court has only considered this issue in the context of FTCA and *Bivens* claims, we have held that *Feres* bars all lawsuits based on injuries incident to military service. *See Crawford v. Texas Army Nat'l Guard*, 794 F.2d 1034, 1035–36 (5th Cir. 1986).  Relevant to this case, claims brought directly under state law are barred by *Feres*. *Holdiness v. Stroud*, 808 F.2d 417, 426 (5th Cir. 1987).[1]  In *Holdiness*, the plaintiff filed suit under 42 U.S.C. §§ 1983, 1985; the FTCA; and Louisiana state law. *Id.* at 420.  We followed *Chappell*'s command to hesitate before interfering in the relationships between military personnel and the preference for having those disputes adjudicated under the "unique structure of the military establishment." *Id.* at 426.  We held that judicial review of a

---

[1] In an unpublished opinion, we recently reaffirmed our decision in *Holdiness*. *Davidson v. United States*, 647 F. App'x 289, 290–91 (5th Cir. 2016).  Other circuits have also held that *Feres* applies to state-law claims. *See, e.g.*, *John v. Sec'y of Army*, 484 F. App'x 661, 663–64 (3d Cir. 2012); *Blakey v. U.S.S. Iowa*, 991 F.2d 148, 152 (4th Cir. 1993).

state-law tort claim arising in this context would constitute an "unwarranted intrusion into the military personnel structure" about which the Court has previously warned. *Id.*[2]

The Morrises allege that their case is distinguishable because Thompson removed on the basis of diversity of citizenship. We see no distinction. These are still state-law claims arising in a situation that was incident to service. "[C]ivilian courts may not sit in plenary review over intraservice military disputes." *Crawford*, 794 F.2d at 1035. *Feres* bars state-law claims because adjudication "would undermine military decision-making as surely as federal claims held to be nonjusticiable." *Texas Adjutant Gen.'s Dep't v. Amos*, 54 S.W.3d 74, 78 (Tex. App.—Austin 2001, pet. denied).[3]

The Morrises further argue that the *Feres* doctrine does not apply because Morris and Thompson held the same rank. It is true that the superior-subordinate relationship has at times been relevant in the articulation of the *Feres* doctrine. *Chappell*, 462 U.S. at 300. Nonetheless, the Supreme Court does "not consider the officer-subordinate relationship crucial[.]" *Stanley*, 483 U.S. at 680. In *Stanley*, the Army secretly administered LSD to the plaintiff in order to study its effect on human subjects. *Id.* at 671. The Court "assume[d] that at least some of the defendants were not [his] superior officers . . . ." *Id.*

---

[2] The Morrises characterize the relevant language from *Holdiness* as dicta. Not so. In *Holdiness*, we analyzed each of the plaintiff's claims, devoting an entire section to his state-law tort claim. *See Holdiness*, 808 F.2d at 421–26. There were two grounds on which the claim could have been dismissed, but most of our analysis focused on "the rationale of *Chappell*" and similar cases. *Id.* at 426. The analytical foundation of our holding would have been substantially disrupted had that language been removed. It is binding.

[3] The Morrises attempt to distinguish many Texas cases, but our review convinces us that all support our holding. *See, e.g.*, *Newth v. Adjutant Gen.'s Dep't of Texas*, 883 S.W.2d 356, 360 (Tex. App.—Austin 1994, writ denied).

at 680. Accordingly, the key consideration in applying *Feres* in *Stanley* was the incident-to-service test. *Id*. at 683–84. Another circuit held that *Feres* applied even when the parties were of the same rank. *Mattos v. United States*, 412 F.2d 793, 794 (9th Cir. 1969) (per curiam). *Feres* requires that we avoid "judicial intrusion into the area of military performance[.]" *Id*. The relative rank of the plaintiff and defendant are of no moment.

Though neither party disputes that these events occurred incident to military service, we examine the test. We are to consider three factors: (1) the duty status of the service member; (2) the place where the injury occurred; and (3) the activity in which the service member was engaged at the time of the injury. *Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 297 (5th Cir. 2008). The facts of this case involved actions taken by two active-duty service members on Randolph Air Force Base during a military training function. The Morrises claims are thus incident to service, and *Feres* applies regardless of the rank of the parties or the bringing of state-law claims.

*(2) Constitutionality of* Feres *and (3) the Consortium Claim*

The Morrises argue that the application of the *Feres* doctrine would interfere with their constitutional rights. They argue that not allowing them to sue military personnel violates their Fifth and Fourteenth Amendment rights, as well as of their right to access courts. These arguments fail. Though the *Feres* doctrine has been subject to criticism, *United States v. Johnson*, 481 U.S. 681, 692–703 (1987) (Scalia, J., dissenting), it is Supreme Court precedent binding on this court.

Finally, the Morrises concede that Jeffrey Morris's loss-of-consortium claim, which is derivative of his wife's claim, will be barred if hers is. *See*

*Schoemer v. United States*, 59 F.3d 29, 30 n.5 (5th Cir. 1995).  Because of our holding as to Meredith Morris's claims, Jeffrey Morris's loss-of-consortium claim also fails.

### *(3) Westfall Act*

A new issue was presented for the first time at oral argument. The Morrises' counsel argued that *Feres* does not apply because Thompson did not use the procedures of the Westfall Act[4] to have the factual events on which the state-law claims are based certified as being incident to military service.

Oral argument is far too late a time to be injecting a new issue.  Indeed, an issue not properly raised in the district court and timely briefed on appeal is not before us.  *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004).  The Morrises' counsel orally argued that two cases relevant to the argument were in fact cited in their briefing.  The Morrises' initial brief, though, cited just one of them and only to support that *Feres* does not apply to state-law claims.  *See Day v. Massachusetts Air Nat'l Guard,* 167 F.3d 678 (1st Cir. 1999).   That overstates what *Day* held, and, regardless, the brief makes no reference to *Day*'s discussion of the Westfall Act and certification.  In the reply brief, the Morrises cited both *Day* and another opinion upon which they wish to rely.  *See Lutz v Sec'y of Air Force,* 944 F.2d 1477, 1488 (9th Cir. 1991).  That brief cited *Day* and *Lutz* for the proposition that incidents between servicemembers of equal rank and involving activities that were outside of the scope of employment are not subject to *Feres*.  Westfall certification again went

---

[4] *See* 28 U.S.C. §§ 2671–2680.

unmentioned. Even more importantly, questions about Westfall were not presented to the district court.

Despite the lateness of the issue, this court has an independent obligation to confirm that we have jurisdiction regardless of the parties' arguments. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). If Thompson's failure to seek certification under the Westfall Act somehow affects our jurisdiction, we must consider the issue.

We thus examine just what the Westfall Act provides. Relevant here, when a federal employee is named in a tort suit, the Attorney General may certify that the employee was "acting within the scope of his office or employment at the time of the incident out of which the claim arose," which will cause the federal employee to be dismissed and the United States substituted as the defendant. 28 U.S.C. § 2679(d)(1). This Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)). For the first time in our courtroom, the Morrises raised that *Feres* cannot bar these claims because the Attorney General never declared anything about Thompson's status as a federal employee at the time of the incident.

We see no jurisdictional defect in having a case proceed against a party who could but did not invoke a statutory procedure to gain immunity. Until immunity is claimed, the individual may be a proper party. Here, the *Feres* doctrine provided its own mechanism for determining the propriety of bringing suit against this airman.

There also was no error in allowing removal. Removal would have been conclusively established had there been a Westfall Act certification. *Osborn*,

549 U.S. at 231. Even without that basis, there was another basis for removal here — complete diversity of the parties. The failure of anyone to seek certification under Westfall does not divest us of the jurisdiction to resolve what is brought to us on this appeal.

AFFIRMED.