# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 5, 2026

Lyle W. Cayce
Clerk

————————

No. 25-10507

————————

Doug Deno,

*Plaintiff—Appellant*,

*versus*

Progressive Casualty Insurance Company, *as Subrogee of Paul Stewart*; Progressive Advanced Insurance Company, *as Subrogee of Ed Hinson*; Starstone Specialty Insurance Company, *Axis Surplus Insurance Company, and Ironshore Specialty Insurance Company, as Subrogee of WaterAxis Surplus Insurance Company, and Ironshore Specialty Insurance Company, as Subrogee of Water*view Marinas; ACE American Insurance Company, *as Subrogee of Michael Saul*; Ed Hinson, Jr.,

*Defendants—Appellees*.

————————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CV-1094

————————————————————————

Before Stewart, Graves, and Oldham, *Circuit Judges*.

Per Curiam:[*]

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-10507

This case arises from a fire and explosion on a motor yacht at the Silver Lake Marina on Grapevine Lake in Texas. After the explosion, the owner of the motor yacht filed a petition in federal district court for limitation of liability under the Limitation of Liability Act ("Limitation Act"). *See* 46 U.S.C. §§ 30501, *et seq.* Thereafter, various insurance companies moved to dismiss the case under Rule 12(b)(1), contending that the district court lacked admiralty jurisdiction over the yacht-owner's claims. *See* FED. R. CIV. P. 12(b)(1). The district court agreed and dismissed the petition. This appeal ensued. For the following reasons, we AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

On October 13, 2024, a motor yacht[1] caught fire and exploded ("the Incident") on Grapevine Lake in North Texas. The explosion injured one person and caused at least ten other boats in the marina to burn. On November 7, 2024, the yacht-owner, Douglas Deno, filed a petition in federal district court pursuant to the Limitation Act. *See* 46 U.S.C. §§ 30501, *et seq.* In his petition, Deno asserted that admiralty jurisdiction existed in his case, and he sought to limit his liability from subsequent claims of other vessel-owners whose boats were damaged due to the Incident. *Id.*; *see also* FED. R. CIV. P. 9(h); FED. SUPP. R. CIV. P. F.

Several insurance companies (hereinafter, the "Insurers") moved to dismiss Deno's petition under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2] The Insurers argued that the district court lacked admiralty jurisdiction over Deno's claims because he failed to establish that the

---

[1] M/V 1999 Carver 406 Aft Cabin (HIN: CDRW0051C999).

[2] Although the Insurers filed separate motions to dismiss in the district court proceedings, the district court considered and ruled on the motions collectively, treating them as one motion.

2

No. 25-10507

Incident: (1) occurred on navigable waters of the United States under the "location test"; and (2) had a significant nexus with traditional maritime activity under the "connection" test. Deno countered that the district court had admiralty jurisdiction because Grapevine Lake is navigable under the definition of "navigable waters" in 33 C.F.R. § 329.4 and the definition of "waters of the United States" in 40 C.F.R. § 120.2. In support, Deno submitted as exhibits: (1) a consent agreement and final order from the Environmental Protection Agency's ("EPA") Office of Enforcement and Compliance Assurance defining Grapevine Lake as a navigable water under 40 C.F.R. § 112.2; and (2) the Affidavit and Expert Report of Certified Marine Consultant and Surveyor Elliott Tulloch defining Grapevine Lake as a navigable waterway under 40 C.F.R. § 120.2.

The district court agreed with the Insurers and dismissed Deno's suit. In its Memorandum Opinion & Order, the district court determined that Deno failed to provide sufficient evidence in support of his arguments that Grapevine Lake is navigable. In so holding, the court explained that the evidence presented showed that "Grapevine Lake is not navigable because it is landlocked, located entirely within the State of Texas, and primarily used for flood-control and recreation." It then held that because Deno failed to meet his burden of proving that Grapevine Lake is navigable under the location test set forth in this court's controlling precedent, it was unnecessary to address whether he had met his burden with respect to the connection test. The district court concluded on these grounds that it lacked subject matter jurisdiction over the case and thus dismissal was warranted. Deno filed this appeal.

No. 25-10507

## II. DISCUSSION

On appeal, Deno contends that the district court erred when it dismissed his suit for lack of subject matter jurisdiction under Rule 12(b)(1) after concluding that Grapevine Lake did not qualify as a "navigable waterway." According to Deno, the district court improperly failed to permit the parties to conduct jurisdictional discovery that would have included information and materials from the U.S. Army Corps of Engineers ("USACE") and the EPA, the latter of which stipulated in a Consent Agreement that Grapevine Lake is a navigable waterway. He further argues that the district court erred under Rule 12(b)(1) when it failed to properly consider the sworn testimony of Deno's marine expert, Tulloch, who opined that Grapevine Lake, in its actual and potential uses, is a navigable waterway. We address his contentions below.

We conduct a de novo review of a district court's Rule 12(b)(1) dismissal for lack of subject matter jurisdiction. *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017). "The party asserting jurisdiction constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citation modified). In ruling on a motion to dismiss, the district court may rely on the complaint, the undisputed facts in the record, and its resolution of disputed facts. *Id.* "The motion should be granted only if it appears certain the plaintiff cannot prove any set of facts that would entitle her to recovery." *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

The United States Constitution grants federal courts the authority to hear "all Cases of admiralty and maritime Jurisdiction." U.S. CONST., art. III, § 2. This jurisdiction is codified in 28 U.S.C. § 1333(1) which provides that federal district courts have original jurisdiction in admiralty and maritime cases. Federal Rule of Civil Procedure 9(h) further provides that a

party's "pleading may designate the claim as an admiralty or maritime claim." FED. R. CIV. P. 9(h)(1).

Under the Limitation Act, a shipowner may "bring a civil action in a district court of the United States for limitation of liability." *In Re N&W Marine Towing, LLC*, 90 F.4th 724, 729 n.2 (5th Cir. 2024) (quoting 46 U.S.C. § 30511(a)). Pursuant to the Act, shipowners can limit their liability to "the value of the vessel and pending freight for a variety of claims, debts, and liabilities that might arise from vessels' activities so long as the incident giving rise to liability occurred without the privity or knowledge of the owner." *Id.* (citation modified). The Limitation Act, however, does not confer admiralty jurisdiction upon federal courts. *Guillory v. Outboard Motor Corp.*, 956 F.2d 114, 115 (5th Cir. 1992). Therefore, "[s]uits lacking any relationship to either navigable waters or traditional maritime activity are without admiralty jurisdiction." *Id.*[3]

"[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *see also In Re La. Crawfish Producers*, 772 F.3d 1026, 1029 (5th Cir. 2024); *Bommarito v. Belle Chasse Marine Transp., LLC*, 159 F.4th 297, 302 (5th Cir. 2025). A plaintiff can satisfy the location test by showing that the "tort occurred on navigable

--------

[3] Rule F of the Supplemental Rules for Admiralty or Maritime Claims provides:

Upon compliance by the owner with the requirements of . . . this rule all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action.

FED. SUPP. R. CIV. P. F(3).

waters" or that "the injury occurred on land but was caused by a vessel on navigable waters." *La. Crawfish Producers*, 772 F.3d at 1029 (citing *Grubart*, 513 U.S. at 534). The tort is considered to have "occurred on" navigable waters if the harm "took effect" there. *Id*. Still, the definition of navigability can vary depending on the purpose for which it is being used. *See Kaiser Aetna v. United States*, 444 U.S. 164, 171 (1979) ("[A]ny reliance upon judicial precedent must be predicated upon careful appraisal of the *purpose* for which the concept of 'navigability' was invoked in a particular case.").

To satisfy the connection test, two conditions must be met. *Id*. The first condition is that "the general features of the type of incident involved" have "a potentially disruptive impact on maritime commerce." *La. Crawfish Producers*, 772 F.3d at 1029 (quoting *Sisson v. Ruby*, 497 U.S. 358, 363, 364 n.2 (1990)). The second condition is that "the general character of the activity giving rise to the incident" must have "a substantial relationship to traditional maritime activity." *Id*. (quoting *Grubart*, 513 U.S. at 534).

Over 150 years ago, the Supreme Court explained in *The Daniel Ball* that "navigable waters" are waters which "form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water." 77 U.S. 557, 563 (1870). In plain terms, this means that a body of water is considered navigable if it serves as a potential conduit for interstate commerce or connects to another body of water that does. *Id*. In that case, the Court held that the Grand River was navigable because, by its junction with Lake Michigan, it formed a continued highway for commerce with other states and foreign countries. *Id*. at 564. Perhaps more significantly, the Court further explained that a body of water is not considered navigable if it located within the boundaries of only one state. *Id*. at 565; *see also Guillory*, 956 F.2d at 115 (holding that because the Crooked Creek Reservoir was located

entirely within the boundaries of Louisiana and could not support interstate travel, it was considered non-navigable).

As a preliminary matter, we disagree with Deno that the district court erred in concluding that Grapevine Lake is not a navigable waterway without permitting the parties to conduct jurisdictional discovery. The record reflects that Deno never moved the district court to allow for jurisdictional discovery. Indeed, as he concedes on appeal, he merely stated in passing in a footnote in his response to the Insurers' motions to dismiss that he "had requested information and materials from the EPA" under the Freedom of Information Act. Deno suggests that this footnote, which he refers to as "rais[ing] an inference," somehow equates to a request for the district court to allow the parties to conduct jurisdictional discovery. But preservation of issues for argument on appeal requires more than "raising an inference" in a passing footnote before the district court. Because Deno concedes that he did nothing more in support of his intent to conduct jurisdictional discovery, we hold that his arguments on appeal related to discovery are forfeited. *See United States v. Zuniga*, 860 F.3d 276, 284 n.9 (5th Cir. 2017).

Turning to the merits, our review of the record evidence and controlling precedent supports the district court's conclusion that Grapevine Lake is not a navigable waterway. As stated, to invoke federal admiralty jurisdiction, Deno must allege facts sufficient to satisfy the location and connection tests. *See Grubart*, 513 U.S. at 534; *La. Crawfish Producers*, 772 F.3d at 1029; *Bommarito*, 159 F.4th at 302. Here, as the district court correctly held, Deno has failed to satisfy the location test because he could

not show that the Incident "occurred on navigable waters."[4] *La. Crawfish Producers*, 772 F.3d at 1029 (citing *Grubart*, 513 U.S. at 534). As the Supreme Court and this court have explained, a body of water is not considered navigable if it is located within the boundaries of only one state. *See The Daniel Ball*, 77 U.S. at 565; *Guillory*, 956 F.2d at 115. Here, the record reflects that Grapevine Lake is an artificial reservoir that was built for the purposes of flood control and water conservation and is located entirely within the boundaries of the state of Texas. Thus, under *The Daniel Ball* and *Guillory*, Grapevine Lake is not considered navigable because it is landlocked within the borders of only one state. *Id.*

Moreover, the dam between Grapevine Lake and the Trinity River completely blocks any vessels from passing between the two bodies of water. So although parts of the Trinity River are considered navigable, Grapevine Lake cannot connect to it so it does not fit the alternative description of navigability provided in *The Daniel Ball*, *i.e.*, "waters which form . . . *by uniting with other waters*, a continued highway over which commerce is or may be carried on with other States or foreign countries." 77 U.S. at 563 (emphasis added). The same is true of Denton Creek, another body of water that connects to Grapevine Lake. Because Denton Creek is located entirely within the state of Texas, its connection to Grapevine Lake does not convert the lake to a navigable waterway. And as the district court observed, Deno has not presented any evidence to show that anyone travels, or could potentially travel, interstate from Lake Grapevine. *See also The Propeller Genesee Chief v. Fitzhugh*, 53 U.S. 443, 454 (1851) ("If it is a public navigable

---

[4] Deno does not argue in the alternative that his injury occurred on land but was caused by a vessel on navigable waters, so we only address whether he has carried his burden of proving that the Incident occurred on navigable waters. *See Grubart*, 513 U.S. at 534.

water, on which commerce is carried on between different states or nations, the reason for the jurisdiction is precisely the same.").

Deno's argument in support of admiralty jurisdiction fails to meaningfully address this court's controlling precedent with respect to the location and connection tests. Recall that to invoke federal admiralty jurisdiction, Deno "must allege facts sufficient to satisfy" both tests. *See Grubart*, 513 U.S. at 534; *La. Crawfish Producers*, 772 F.3d at 1029; *Bommarito*, 159 F.4th at 302. Although he makes several weak arguments related to navigability, he does not attempt to show that he meets the standards set forth in either test. Instead, he argues that Grapevine Lake is navigable under the definition of "navigable waters" in 33 C.F.R. § 329.4 and the definition of "waters of the United States" in 40 C.F.R. § 120.2. But as the district court explained, section 329.4 applies only to "all Corps of Engineers districts and divisions" and section 120.2 applies to the Clean Water Act. Accordingly, his reliance on these statutes is misplaced and fails to support his position that Grapevine Lake is navigable under this court's precedent.[5]

Deno's reliance on the EPA's consent agreement is further misdirected. As the Supreme Court explained in *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971), the language of a consent decree defines the obligations of the parties and only the parties. *See also Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 317 (5th Cir. 2024) ("Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms."). Thus, as the district court explained,

---

[5] Because Deno failed to meet his burden of proving that Grapevine Lake is navigable under the location test, we need not address whether he met his burden with respect to the connection test. *Grubart*, 513 U.S. at 534; *La. Crawfish Producers*, 772 F.3d at 1029; *Bommarito*, 159 F.4th at 302.

federal courts are not bound by the terms of the EPA's consent decrees, or any other agency's consent decree, under the Clean Water Act or any other Act. *See Martin v. Wilks*, 490 U.S. 755, 768 (1989) ("Parties who choose to resolve litigation through settlement may not dispose of the claims of a third party without that party's agreement." (citation modified)). Accordingly, the EPA's consent decree that defined Grapevine Lake as navigable in a footnote pursuant to 40 C.F.R. § 112.2 has no bearing on the outcome of this case because this court is not bound by the terms of a consent decree that involves a settlement between parties unrelated to this litigation. *Id*.

Deno further claims that he has obtained records from USACE regarding "information and materials pertaining to the dam at Grapevine Lake, namely, its capability and actual instances in which it released water into the Trinity River within the past three years." According to Deno, these records are not part of the record in this case because they were received after his case was dismissed. But as the record reflects, USACE's 2022 Grapevine Lake Master Plan indicates that any "navigation mission was deauthorized" and the lake has now been converted to water supply.[6] For this reason, any purported past instances of releasing water into the Trinity River are insignificant to this court's analysis of whether Grapevine Lake is navigable or was navigable when the Incident occurred in late 2024. Indeed, to the contrary, USACE's list of navigable waters expressly lists the Trinity River as being the only nearby, potentially navigable water source and the River's navigability ends at least twenty miles southwest of the Grapevine Lake Dam. Grapevine Lake on the other hand, is not listed as navigable at all.

---

[6] Memorandum for Commander, USACE, Fort Worth District (SWF), on Grapevine Lake, Tex. Master Plan Revision (Sep. 27, 2022), https://www.swf.usace.army.mil/Portals/47/docs/Lakes/Grapevine/MasterPlan/Grape vine_Master_Plan-MP_092022.pdf?ver=8-hCdgI-YlMcjETM9aie5g%3d%3d

In a related argument, Deno avers that the standard for navigability is not whether a body of water constitutes a current continuous highway, but rather whether it is capable or susceptible of being used as a highway for commerce. Citing the Fourth Circuit's reasoning in *Price v. Price*, 929 F.2d 131, 135 (4th Cir. 1991), he contends that "merely because a body of water is not currently being used for commercial navigation does not require the opposite conclusion, that it is not navigable." But Deno misunderstands *Price*. In that case, the district court "directed its focus solely on whether the Kerr Reservoir was 'currently being used' for commercial navigation" and concluded that because there was no active commercial activity, it was not navigable. *Id.* The court of appeals reversed, however, explaining that "[a]lthough the Kerr Reservoir may not currently be used for commercial navigation, because it is capable of being used for purposes of transportation and commerce by customary modes of trade and travel on water, it is a navigable waterway for purposes of determining admiralty jurisdiction." *Id.* The specific distinction made in *Price* was between a navigable body of water that was currently being used for navigation and a navigable body of water that was *not* currently being used for navigation even though it was still capable of being used for that purpose. Here, however, Grapevine Lake is not merely a navigable body of water that no one is using for navigation—it is not a navigable body of water at all. Nor could it be used for navigation in its current state even if someone attempted to use it for that reason. It is landlocked on all sides and blocked by a dam. Thus, whether the lake was considered navigable in the past has no bearing on whether it is navigable now. The Fourth Circuit's reasoning in *Price* does not contradict this reasoning. *Id.*

Finally, Deno argues that the district court erred in failing to consider the sworn testimony of his marine expert, Tulloch. According to Deno, the sworn testimony and report that he submitted from Tulloch, "a certified

marine consultant and surveyor," support the conclusion that Grapevine Lake is navigable and thus overcome the Insurers' Rule 12(b)(1) jurisdictional challenge. But like Deno, Tulloch merely relies on various public laws related to regulatory authorities as opposed to the controlling precedent that actually applies to this court's admiralty jurisdiction inquiry. Thus, even if the district court disregarded Tulloch's sworn testimony and report, which is not apparent from the record, this evidence would not have supported Deno's position that Grapevine Lake is navigable because it relies on regulations that do not control this court's jurisdictional analysis.

In conclusion, as the party asserting that admiralty jurisdiction exists in this case, Deno "constantly bears the burden of proof that jurisdiction does in fact exist." *Morris*, 852 F.3d at 419. His attempt to prove that admiralty jurisdiction exists in this case, however, falls short because he fails to provide evidence in support of his position that Grapevine Lake is navigable under this court's applicable precedent. *See Grubart*, 513 U.S. at 534; *La. Crawfish Producers*, 772 F.3d at 1029; *Bommarito*, 159 F.4th at 302. Instead, he relies on inapplicable regulations and statutes, a non-binding EPA consent decree, a misguided expert report, and materials from USACE that contradict, rather than support his claim that admiralty jurisdiction exists. The district court did not err in granting the Insurers' Rule 12(b)(1) motions to dismiss.

## III. Conclusion

For the aforementioned reasons, the district court's judgment dismissing this case for lack of jurisdiction is AFFIRMED.